**UNITED STATES of America**

v.

**Herbert K. FISHER and Herman Bloom.**

**Crim. A. No. 86–00451–18, 19.**

United States District Court, E.D. Pennsylvania.

June 29, 1988.

---

See also 692 F.Supp. 488.

Richard L. Scheff, Asst. U.S. Atty., Philadelphia, Pa., for Government.

William J. Winning, Curran, Winning, & Sioravanti, Mevia, Pa., for defendant Herbert Fisher.

Joel Slomski, Zigiazomo & Slomski, Philadelphia, Pa., for defendant Herman Bloom.

## MEMORANDUM AND ORDER

KATZ, District Judge.

Defendants Herman Bloom and Herbert K. Fisher have each filed motions and supplemental motions to dismiss the indictments, based upon allegations of prosecutorial misconduct before the grand juries, and the government has responded.[1] After a hearing, I find no basis to grant such relief.

Indictments were first returned against both defendants on October 23, 1986. Defendant Herman Bloom was charged in four counts with violating federal law, including violations of 18 U.S.C. § 1962 ("RICO" and "RICO conspiracy"), 18 U.S. C. § 1954 (offer to influence operations of an employee benefit plan) and 18 U.S.C. § 664 (embezzlement from an employee benefit plan). Defendant Herbert K. Fisher was charged in eight counts of violating the same statutes. A superseding indictment, involving no substantive changes in the charges against defendants Bloom and Fisher, was returned by the same grand jury on June 18, 1987 (hereinafter the "first superseding indictment"). After defendants filed their original motions to dismiss the first superseding indictment against them, a new grand jury returned another indictment (hereinafter the "second superseding indictment") against defendants Bloom and Fisher.

At issue here is the conduct of the prosecutor and of two special agents of the Federal Bureau of Investigation ("F.B.I."), William P. Grace and Quinn John Tamm, Jr.[2] before the grand juries that returned the first and second superseding indictments against these defendants.[3] Defendants allege that the government, through its counsel and agents, engaged in prosecutorial misconduct before the grand jury by intentionally and knowingly presenting perjured testimony to the grand jury that returned the indictment and first superseding indictment,[4] and by engaging in an attempt to mislead the grand jury that returned the second superseding indictment, all in an effort to continuously harass and badger these defendants into cooperating with the government.

## FACTS

A brief recitation of what occurred before the grand jury that returned the indictment and first superseding indictment is necessary here. Indeed, resolution of defendants' motions and supplemental motions is dependent on whether or not the government's empanelling of a third grand jury cured any potential prejudice which may have occurred before the earlier grand juries.

In their original motions defendants Bloom and Fisher contend that on February 20, 1986, while testifying before the first grand jury, Agent Grace perjured himself when he testified that (1) on November

---

1. Motions to dismiss the indictment based upon prosecutorial misconduct were originally filed with this court by defendant Bloom on November 18, 1987 and by defendant Fisher on December 14, 1987. The government responded to both motions, and on January 11, 1988, defendant Bloom filed a reply. In addition, defendant Fisher has filed a reply to the government's response to his supplemental motion to dismiss the indictment. After a hearing held on May 27, 1988, both defendants filed supplemental briefs in support of their motions to dismiss the indictment.

2. Agents Grace and Tamm were the case agents who supervised the investigation, including the electronic surveillance, of these defendants.

3. In actuality, three grand juries were convened to hear testimony relevant to these two defendants. The first expired on April 23, 1986, and

heard the testimony of Agent Grace on February 20, 1986. The second grand jury was empanelled on April 23, 1986. It was this second grand jury that returned the indictment and the first superseding indictment against these defendants. This grand jury expired on October 27, 1987. A third grand jury was empanelled on January 21, 1988 and returned the second superseding indictment that same day.

4. Defendant Herman Bloom alleges that Agent William P. Grace perjured himself on two occasions (February 20, 1986 and May 1, 1986). Defendant Herbert K. Fisher joins in Mr. Bloom's contentions and also alleges that Agent Quinn John Tamm, Jr. perjured himself before the grand jury on one occasion (May 22, 1986).

21, 1985 defendants Bloom and Fisher delivered $10,000 to Mr. Stephen Traitz, Jr., Business Manager of Locals 30 and 30B of the Roofers Union, as part of a kickback from the defendants' law firm (Bloom, Ocks and Fisher) to officials of the Roofers Union; (2) that defendants Bloom and Fisher and Mr. Stephen Traitz, Jr. discussed an increase in the contribution rate to the Roofers Union Prepaid Legal Fund on November 21, 1985, specifically stating that it would be needed to cover the kickback; and (3) that defendant Bloom and Mr. Thomas F. Brown had discussed the delivery of money in envelopes to various judges. In addition, defendants allege that Agent Grace's further testimony on May 1, 1986 that defendants Bloom and Fisher had delivered $5,000 to Mr. Stephen Traitz, Jr. on November 21, 1985 and had discussed increasing the contribution rate to the Prepaid Legal Fund specifically in order to cover the kickback was perjurious. Defendant Fisher also asserts that Agent Quinn John Tamm, Jr. perjured himself when he testified before the grand jury on May 22, 1986 that the F.B.I. had tape recorded Mr. Fisher complaining to Mr. Stephen Traitz, Jr. that the contribution rate for the Prepaid Legal Fund would have to be raised in order to cover the kickback from Mr. Fisher's law firm (Bloom, Ocks and Fisher) to the union officials.[5] The government denies that either the agents or the prosecutor engaged in perjury and contends instead that what transpired before these first two grand juries were merely misstatements and negligent errors, and in one instance, an error in transcription by the court reporter.[6]

On January 29, 1988, shortly before a hearing was to be held before this court in order to resolve these contentions, the government notified counsel for defendants that it intended to seek a second superseding indictment. Defendants sought the intervention of this court in order to prohibit the government from going forward. After a hearing on January 21, 1988, emergency relief was denied by this court, and the government was permitted to seek another indictment against these defendants, without prejudice to defendants' right to challenge the propriety of this second superseding indictment. Defendants in their supplemental motions raise a variety of objections to the second superseding indictment and to the government's conduct in this case. Bloom and Fisher first claim that the second superseding indictment "is radically different from the first two indictments." Defendant Herman Bloom's Supplemental Motion to Dismiss the Indictment, ¶ 3; *see also* Defendant Herbert Fisher's Supplemental Motion to Dismiss the Indictment, ¶ 10. In particular, defendants point to the fact that in the second superseding indictment the government has enlarged the time period of the RICO conspiracy, has dropped various RICO predicate acts, and has included new individuals with roles in the RICO enterprise. In addition, the second superseding indictment contains added descriptive language in an overt act, and two additional overt acts which refer to the law firm of Bloom, Ocks and Fisher. Finally, defendants al-

---

5. In his Second Amendment to his Supplemental Motion to Dismiss the Indictment defendant Bloom contends that the government improperly submitted the testimony of Dr. Charles Kravitz to the grand jury that returned the original and first superseding indictment. Defendant Bloom argues that Dr. Kravitz's testimony dealt only with activities of Mr. Bloom other than those charged in the indictment and thus its presentation by the government was improper. Defendant Bloom relies on *United States v. Hogan*, 712 F.2d 757 (2d Cir.1983) to support his claim. The *Hogan* court, however, found prejudicial misconduct based on an accumulation of misconduct by the prosecution, including perjury, "inflammatory rhetoric" and the government's attempt to convince the grand jury that the defendant was a "bad" person. *Hogan*, 712 F.2d at 761. There is no such accumulation of misconduct here, nor any indication that the government misstated Rule 404(b) of the Federal Rules of Evidence or that it intended to use the Kravitz testimony for impermissible reasons.

6. Agent Grace's mistaken testimony on February 20, 1986 that defendant Bloom had, through Mr. Thomas Brown, delivered money in envelopes to judges was merely an error in transcription by the court reporter. An examination of the transcript reveals that the name of Stephen Traitz, Jr. should be properly inserted where Mr. Bloom's name now appears.

lege that the second superseding indictment has enlarged the time period of the alleged embezzlement in which Mr. Bloom is a defendant. Defendants do not contend that they face any new charges in the second superseding indictment.

In addition to their claims that the substantive changes in the second superseding indictment have prejudiced them in their ability to defend themselves against these criminal charges, defendants allege that "the three indictments returned here constitute a pattern of harassment by the Government." Defendant Bloom's Supplemental Motion, ¶ 8(b). Defendants claim that the prosecutor, in his presentation to the third grand jury, "continued to mislead the grand jury and engage in fundamentally unfair tactics," Defendant Bloom's Supplemental Motion, ¶ 8(d), so that "the return of [the] second superseding indictment does not cure the grand jury abuse and prosecutorial misconduct which occurred in connection with the return of the original indictment and the first superseding indictment." Defendant Fisher's Supplemental Motion, ¶ 6.

Specifically, defendant Bloom contends that the "government misled and inflamed the January 21, 1988 indicting grand jury" by: (1) including references to and presenting evidence of crimes of bribery and mail fraud, when neither defendant Bloom nor Fisher were charged with such crimes; (2) presenting evidence to convince the grand jury that defendant Bloom was involved in illegal kickbacks to the union officials from the first day of the prepaid legal services contract, when in fact the government had no such evidence; (3) misleading the grand jury by inaccurately describing the charges contained in the indictment; and (4) improperly trying to convince the grand jury that defendant Bloom gave money directly to union officials, when the government was aware that it had no such evidence. Defendant Bloom's Supplemental Motion, ¶ 8(e). In addition, defendant Fisher claims that the prosecutor engaged in misconduct before the grand jury that returned the second superseding indictment by failing "to present the grand jury with any evidence of other illegal acts engaged in by the Roofers Union officials, thereby depriving the grand jury of the factual background against which defendant Fisher acted." Defendant Fisher's Supplemental Motion, ¶ 11.

## DISCUSSION

■ While defendants contend that the changes made in the indictments from the first superseding indictment to the second have hobbled them in their ability to defend themselves against these criminal charges, the government responds that "Superseding Indictment II differs from prior indictments because it is streamlined to allege only those acts relevant to defendants Bloom and Fisher.... In all other respects, Superseding Indictment II contains the same allegations against defendants Bloom and Fisher as were contained in prior indictments." Government's Answer to Defendant Herman Bloom's Motion to Dismiss, ¶ 3. It is well established that the government has wide latitude to obtain a superseding indictment at any time prior to trial, and may then select the indictment under which to proceed at trial. *United States v. Edwards*, 777 F.2d 644, 649 (11th Cir.1985); *cert. denied sub nom. Bolden v. United States*, 475 U.S. 1123, 106 S.Ct. 1644, 90 L.Ed.2d 189 (1985); *United States v. Grabinski*, 674 F.2d 677, 680 (8th Cir. 1982), *cert. denied*, 459 U.S. 829, 103 S.Ct. 67, 74 L.Ed.2d 67 (1982); *United States v. Millet*, 559 F.2d 253, 257–58 (5th Cir.1977), *cert. denied*, 434 U.S. 1015, 98 S.Ct. 732, 54 L.Ed.2d 759 (1978); *United States v. Chagra*, 638 F.Supp. 1389, 1392 (W.D.Tex.1986); *United States v. Horak*, 633 F.Supp. 190, 195 (N.D.Ill.1986). Indeed, the government "may have two or more indictments pending against a defendant on the same or related charges adding or subtracting pertinent counts." *United States v. Cerilli*, 428 F.Supp. 801, 808 (W.D.Pa.1977), *aff'd* 558 F.2d 697 (3rd Cir.1977), *cert. denied*, 434 U.S. 966, 98 S.Ct. 507, 54 L.Ed.2d 452 (1977). I find that the changes made to the second superseding indictment in no way substantially alter the charges against which these defendants must defend or the

facts which they must investigate so as to prejudice these defendants.[7]

The discretionary authority of the prosecution to seek the return of a superseding indictment is not, however, unlimited. The government may not return a superseding indictment against a defendant merely for the purpose of harassing or intimidating that defendant. *Edwards*, 777 F.2d at 649; *Horak*, 633 F.Supp. at 195. Indeed, the government "may not exercise its prosecutorial authority in order to punish a defendant in retaliation for his exercise of his rights rather than to further a legitimate law enforcement interest." *Chagra*, 638 F.Supp. at 1393. In order to establish prosecutorial vindictiveness the "[d]efendant must establish the prosecutor's state of mind and must demonstrate that, but for vindictiveness on the part of the prosecutor, the extra prosecutorial activity would not have been undertaken." *Chagra*, 638 F.Supp. at 1393 (citing Comment, *Two Models of Prosecutorial Vindictiveness*, 17 Ga.L.Rev. 467 at 483–84 (1983)). Defendants have not met this standard, nor have these defendants shown that the superseding indictments returned in this case reflect harassment on the part of the government. Defendant Bloom contends that "[t]he three indictments returned here constitute a pattern of harassment by the government against Mr. Bloom in order to pressure him into cooperating." Defendant Bloom's Supplemental Memorandum of Law, p. 9. Defendant Fisher likewise claims that the government has sought "to deprive defendant Fisher ... of his right to pursue and litigate motions before this court...." Defendant Fisher's Supplemental Motion, ¶ 10. In response, the government has stated that rather than to harass or intimidate these defendants, its purpose in seeking the return of the second superseding indictment was instead to cure any prejudice that may have resulted to these two defendants as a result of the incorrect testimony that was presented to the grand jury that returned the first superseding indictment. As the record reflects no other motive on the part of the government, I find that the government had no impermissible reason for seeking the return of the second superseding indictment.

Defendants also claim that the government engaged in behavior before the grand jury that returned the second superseding indictment which was calculated to mislead and to inflame the grand jury into returning an indictment against Mr. Bloom and Mr. Fisher. Therefore, defendants argue, the government's presentation to this third grand jury did not cure any prejudice that may have resulted to these defendants from the government's behavior before the prior grand jury, but instead compounded the government's prosecutorial misconduct so that the government can be said to have been engaging in an ongoing pattern of misconduct. I find, based upon the record before me and the arguments of counsel, that what transpired before the first two grand juries was not perjury but rather was negligence or inadvertence on the part of the prosecution and the agents, resulting mostly from the press

7. It is apparent to me that rather than substantially broadening the indictment the government has instead edited it to more accurately reflect the charges against defendants Bloom and Fisher. The government has deleted the charges against the Roofers Union defendants who have already been tried so that they are no longer listed as RICO predicate acts. In addition, the government has included new persons with roles in the RICO enterprise so as to reflect those persons who will be speakers in the tapes that the government intends to play at trial. The descriptive language which has been added to an overt act simply represents a more accurate reflection of the conversations contained on tapes that are to be played at trial. In addition, the enlargement of the time period of the RICO conspiracy and of Mr. Bloom's alleged embezzlement also has not substantially altered or amended the charges against these defendants. Instead of prejudicing these defendants, that type of change better enables them to prepare for trial. Finally, the government has added two new overt acts involving the law firm of Bloom, Ocks and Fisher. The inclusion of these additional overt acts in no way broadens the scope of the charges against these defendants. Defendants must still face the same charges returned in the first indictment. This change, rather, informs these defendants of the scope of the government's evidence and the proof that it will adduce at trial.

of events and from lapses of memory.[8] Indeed, the testimony of Agents Tamm and Grace that the defendants had discussed increasing the contribution rate in order to fund the kickback were reasonable inferences from the electronic surveillance. The government did not correct any of the errors that occurred before the first and second grand juries because the prosecutor and the agents did not become aware of them until November, 1987 when defendants' original motion was filed and after the grand juries had already expired. In any event, the presentation of the government to the third grand jury cured any potential prejudice that may have affected these defendants. The government presented its evidence to a completely new grand jury which was unconnected with the Roofers investigation, and which had been empanelled only that same day. Indeed, allegations of prosecutorial misconduct before this final grand jury are without merit. I will, however, address each of defendants' arguments concerning what transpired before the grand jury that returned the second superseding indictment. First, however, a review of the state of the law regarding prosecutorial misconduct before the grand jury is necessary.

 "An indictment returned by a legally constituted and unbiased grand jury, ... if valid on its face, is enough to call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 409, 100 L.Ed. 397 (1956); *see also United States v. Adamo*, 742 F.2d 927, 935–36 (6th Cir.1984), *cert. denied*, 469 U.S. 1193, 105 S.Ct. 971, 83 L.Ed.2d 975 (1985) "[T]he federal courts have clearly established the principle 'that the dismissal of an indictment on the basis of governmental misconduct is an extreme sanction which should be infrequently utilized.' " *United States v. Birdman*, 602 F.2d 547, 559 (3d Cir.1979), *cert. denied*, 444 U.S.

1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980) (quoting *United States v. Owen*, 580 F.2d 365, 367 (9th Cir.1978)). Dismissal of an indictment because of prosecutorial misconduct is appropriate only in particularly egregious or flagrant cases such as where the prosecutor knowingly submits perjured testimony to the grand jury. *See United States v. Roth*, 777 F.2d 1200, 1205 (7th Cir.1985); *United States v. Tham*, 665 F.2d 855, 863 (9th Cir.1981), *cert. denied*, 456 U.S. 944, 102 S.Ct. 2010, 72 L.Ed.2d 466 (1982). Dismissal will not be appropriate, however, when there is no evidence of a deliberate attempt by the witness and the prosecutor to mislead. *United States v. Cathey*, 591 F.2d 268, 272 (5th Cir.1979). In order to warrant dismissal of an indictment prosecutorial misconduct must be "so flagrant that there was 'some significant infringement on the grand jury's ability to exercise independent judgment.' " *United States v. Page*, 808 F.2d 723, 726 (10th Cir.1987) (quoting *United States v. Pino*, 708 F.2d 523, 530 (10th Cir.1983)). There is no basis for dismissal of an indictment valid on its face due to misstatements or mistakes alone. *United States v. Johnson*, 767 F.2d 1259, 1275 (8th Cir.1985); *U.S. v. Levine*, 700 F.2d 1176, 1180 (8th Cir.1983).

██ In *The Bank of Nova Scotia v. United States*, —— U.S. ——, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988), the Supreme Court addressed for the first time the question of a district court's power to dismiss an indictment for prosecutorial misconduct before the grand jury. The case involved a grand jury investigation in which the district court found that the prosecution had violated Federal Rule of Criminal Procedure 6(e) by: (1) disclosing grand jury material to Internal Revenue Service ("IRS") agents with civil tax enforcement duties, (2) not promptly informing the court of

---

**8.** Agent Grace testified and the prosecution elicited his testimony before the first and second grand juries in the midst of an extensive and ongoing investigation into the potentially criminal behavior of numerous individuals. The investigation ultimately resulted in the presentation of over 180 witnesses to the grand juries and in the indictment of approximately 26 persons. Defendants' attempt to characterize as outrageous government misconduct the fact that the agents testified without notes or without reviewing close to 2,000 hours of electronic surveillance with the prosecutor immediately prior to their testimony before the grand jury is inaccurate.

these disclosures, (3) disclosing the names of targets to potential grand jury witnesses, and (4) giving inappropriate instructions to certain grand jury witnesses. The district court also found a violation of Rule 6(d) of the Rules of Criminal Procedure in the appearances by IRS agents before the grand jury in order to read transcripts to the grand jurors, and of 18 U.S.C. §§ 6002 and 6003 by the prosecution's use of "pocket immunity" (immunity granted to a witness by the government, rather than by the court). In addition, the court found that one of the prosecutors had improperly argued with an expert witness during a recess, and within the hearing of the grand jurors; that the government had caused IRS agents to give inaccurate testimony, and had violated the Fifth Amendment by calling certain witnesses only so that these witnesses would assert their privilege against self-incrimination. Finally, the district court concluded that the government had IRS agents sworn as agents of the grand jury so as to impermissibly elevate their credibility, and had violated the Sixth Amendment by conducting certain post-indictment interviews of employees of the Bank of Nova Scotia. The district court dismissed the indictment on the basis of these findings, and the Court of Appeals for the Tenth Circuit reversed the district court, ruling that the petitioners were not prejudiced by the government's behavior, and that absent a finding of prejudice the district court was powerless to dismiss the indictment. The Supreme Court affirmed the Court of Appeals and held that, at least in cases of non-constitutional error, such as this case and the case before the Court, "as a general matter, a District Court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *The Bank of Nova Scotia,* —— U.S. at ——, 108 S.Ct. at 2373. The requirement that a court must find prejudice before it may dismiss an indictment for misconduct by the prosecutor before the grand jury follows the established rule in this circuit.

In *United States v. Martino,* 825 F.2d 754 (3d Cir.1987), the court articulated the analysis to be employed by a court faced with a motion to dismiss an indictment based upon prosecutorial misconduct before the grand jury. The *Martino* court stated that one must look first to see whether prosecutorial misconduct has indeed occurred, and next to whether any sanction, such as dismissal of the indictment or suppression of the evidence, is warranted. *Martino,* 825 F.2d at 759. Dismissal has generally been held to be inappropriate without a finding of prejudice. *Martino,* 825 F.2d at 759 (collecting cases); *but see United States v. Rosenfield,* 780 F.2d 10 (3d Cir.1985), *cert. denied,* 478 U.S. 1004, 106 S.Ct. 3294, 92 L.Ed.2d 709 (1985); *United States v. Serubo,* 604 F.2d 807 (3d Cir.1979); *United States v. Johns,* 688 F.Supp. 1017 (E.D.Pa. 1988) (Ditter, J.). While a court need not reach the issue of prejudice if there has been no misconduct, the cases, in fact, turn on prejudice. "In every case [they] looked to prejudice." *Martino,* 825 F.2d at 759; *see e.g., United States v. Birdman,* 602 F.2d 547 (3d Cir.1979); *United States v. Riccobene,* 451 F.2d 586 (3d Cir.1971) (per curiam); *United States v. Bruzgo,* 373 F.2d 383 (3d Cir.1967). Prejudice which will justify dismissal of an indictment before trial is present only " 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *The Bank of Nova Scotia,* —— U.S. at ——, 108 S.Ct. at 2374 (quoting *United States v. Mechanik,* 475 U.S. 66, 78, 106 S.Ct. 938, 945, 89 L.Ed.2d 50 (1986)).

In *The Bank of Nova Scotia* the Supreme Court left open the possibility that in rare cases a finding of prejudice will not be necessary in order for a district court to dismiss an indictment based upon prosecutorial misconduct before the grand jury. The Court noted that in the case before it "we are not faced with a history of prosecutorial misconduct, spanning several cases, that is so systematic and pervasive as to raise a substantial and serious question about the fundamental fairness of the process which resulted in the indictment."

*The Bank of Nova Scotia,* — U.S. at ——, 108 S.Ct. at 2376.[9] The Court of Appeals has previously stated that dismissal of an indictment may be proper without a finding of prejudice "if there is evidence that the challenged activity was something other than an isolated incident unmotivated by sinister ends, or that the type of misconduct challenged has become 'entrenched and flagrant' in the circuit." *Rosenfield,* 780 F.2d at 11 (quoting *Serubo,* 604 F.2d at 817); *see also Johns,* 688 F.Supp. at 1024.

Defendant Bloom alleges that the government included references to bribery of state and federal officials and to mail fraud in its presentation to the third grand jury, despite the fact that Mr. Bloom was not charged with these crimes, and that this type of behavior constitutes misconduct warranting dismissal of the indictment. *See* Grand Jury Testimony of Agent Quinn John Tamm, Jr., 1/21/88 at 64–77. The government, however, in no way suggested to the grand jury that Mr. Bloom was either charged with or implicated in these crimes. Indeed, the prosecutor specifically stated that there was no evidence that Mr. Bloom had knowledge of or participated in the bribery of public officials. *See* Grand Jury Transcript of Prosecutor's Statement 1/21/88 at 15–17.[10] There is nothing in the record to establish that the prosecutor intended to mislead the grand jury in this way. Similarly, Mr. Bloom contends that the prosecutor engaged in prosecutorial misconduct when he made statements to the grand jury that Mr. Bloom was involved in illegal kickbacks to union officials from "day one" of the prepaid legal services contract, when in fact defendant Bloom was only charged with crimes in 1985. The government contends that if viewed in its proper context the statement accurately describes the annual embezzlement and kickback scheme as being pre-planned each year. *See id.* at 11–13. Given the ambiguity of possible interpretation, this statement did not constitute perjury or intentional misconduct. In addition, defendants argue that the prosecution misled the grand jury in its description of the charges contained in the indictment. There is no indication that the prosecutor misstated the law or did so deliberately so as to mislead the grand jury. Defendant Bloom points specifically to the prosecutor's use of the word "rebate" in reference to 18 U.S.C. § 1954, and to the prosecutor's statement that only 1985 is charged as a kickback year for purposes of the RICO predicate acts, when in actuality 1983 and 1984 were also charged as kickback years, as prosecutorial misconduct. The use of the word "rebate" by the prosecutor to describe the type of conduct made criminal by 18 U.S.C. § 1954, was wholly proper, and his explanation of the law correctly informed the grand jurors of what constitutes criminal behavior under the statute. *See id.* at 6–7, 14–16. In addition, any confusion of years was neither misconduct nor prejudicial, but rather harmless. Finally, defendant Bloom contends that the prosecutor misstated that the government had evidence that Mr. Bloom actually gave money directly to union officials when in reality there was no such evidence. The government contends that, to the contrary, such a statement was accurate. *See* Transcript of November 21, 1985 Conversation

---

9. The Court also noted that in "isolated exceptions" the particular nature of the violation allows for a presumption of prejudice. "These cases are ones in which the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice." *The Bank of Nova Scotia,* — U.S. at ——, 108 S.Ct. at 2375. The court noted two examples, both involving discriminatory selection of grand jurors based on race or sex. In addition, the errors in those cases were of constitutional magnitude and remedies other than dismissal were impractical. *See Vasquez v. Hillery,* 474 U.S. 254, 260–64, 106 S.Ct. 617, 621–24, 88 L.Ed.2d 598 (1986); *Ballard v. United States,*

329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181 (1946). The court then went on to say that "[s]uch considerations are not presented here...." *The Bank of Nova Scotia,* — U.S. at ——, 108 S.Ct. at 2375.

10. In addition, defendant Bloom's attempt to characterize one grand juror's misunderstanding of the evidence as prosecutorial misconduct is incorrect. *See* Grand Jury Transcript of Prosecutor's Statement 1/21/88 at 17. Regardless, the prosecution's response to the grand juror's misstatement was an attempt to correct the misunderstanding. *Id.* at 17–18.

at 14. Regardless, misstatements or mistakes alone, if such they were, are not sufficient to warrant a finding of misconduct or to justify dismissal of an indictment. *Johnson,* 767 F.2d at 1275; *Levine,* 700 F.2d at 1180, *see also The Bank of Nova Scotia,* —— U.S. at ——, 108 S.Ct. at 2376–78 (prosecutor must have knowledge of falsity).

■ Defendant Fisher, on the other hand, contends that the government engaged in prosecutorial misconduct by failing to present to the grand jury extensive evidence of the activities of the thirteen roofers who have previously been tried and convicted. Mr. Fisher believes that this evidence would have enabled the grand jury to conclude that "defendant Fisher was just as much a victim of the extortion and violence perpetrated by the Roofers Union as were the roofing contractors that were extorted." Defendant Fisher's Supplemental Motion, ¶ 11. I therefore have before me the question of whether this material was exculpatory, and if so whether the prosecutor had an obligation to disclose this evidence to the grand jury. The Court of Appeals for the Third Circuit has not yet decided whether a prosecutor must disclose exculpatory evidence to the grand jury. *See U.S. v. Ismaili,* 828 F.2d 153, 165 n. 13 (3d Cir.1987); *Johns,* 688 F.Supp. at 1021. Regardless, this evidence is not exculpatory in the sense that it is "the kind of clearly exculpatory evidence that would likely have convinced the ... grand jury ... not to indict." *Hochman v. Rafferty,* 831 F.2d 1199, 1204 (3d Cir.1987). To go before the grand jury without an extensive presentation of the evidence relevant to thirteen previously tried individuals was not an attempt to mislead the jury or to engage in fundamentally unfair tactics before it. *See Hochman,* 831 F.2d at 1204.

Indeed, if the government had, before this third grand jury, presented extensive evidence of the crimes of thirteen convicted defendants, both defendants Bloom and Fisher would have a reasonable basis to contend that such a presentation constituted prosecutorial misconduct.[11]

■ I find that the presentation of the government to the grand jury that returned the second superseding indictment was free of misconduct. What occurred before the first two grand juries in this case was nothing other than an inadvertence on the part of the agents and the prosecutor which did not substantially influence the grand jury's decision to indict, so as to prejudice these defendants. As the Supreme Court noted in *The Bank of Nova Scotia,* the potential for prejudice should be assessed in light of the length and complexity of the grand jury investigation. *See The Bank of Nova Scotia,* —— U.S. at ——, 108 S.Ct. at 2376–78. In that case, the Court wrote that in considering the prejudicial effect of misconduct, it was relevant to consider that "these incidents occurred as isolated episodes in the course of a 20–month investigation, an investigation involving dozens of witnesses and thousands of documents." *The Bank of Nova Scotia,* —— U.S. at ——, 108 S.Ct. at 2378. Similarly, the errors attributed to the government and its agents in this case occurred in the context of a lengthy and complex investigation. *See* note 8, *supra.* In any event, the government's second superseding indictment cured any prejudice which may have resulted to these defendants from the prosecution's prior errors. Similarly, defendants have presented no evidence that the misconduct challenged here has become entrenched and flagrant in this circuit or so systematic and pervasive as to raise a substantial and serious question

---

**11.** In his Amendment to his Supplemental Motion to Dismiss the Indictment defendant Fisher argues that the prosecutor incorrectly stated to the third grand jury that there was evidence implicating Herbert Fisher in kickback payments in 1983 and 1984. The indictment charges Mr. Fisher with just such offenses; accordingly Mr. Fisher's argument amounts to a contention that there is insufficient evidence to support these charges. Such an inquiry by this

court is foreclosed in the absence of perjury. *See* 8 R. Cipes, I. Hall, & M. Waxner, *Moore's Federal Practice,* ¶ 6.02[2] (1988); *Costello,* 350 U.S. at 363, 76 S.Ct. at 408. These prosecution statements were not perjury, rather they were supported by the evidence. Transcript of 11/11/85 Conversation at 3:23 p.m.; 11/21/85 Conversation at 4:05 p.m.; and 12/3/85 Conversation at 1:25 p.m.

about the fundamental fairness of the process which resulted in the indictment. The record is devoid of evidence that the government has continuously sought to harass these defendants or to circumvent the supervisory power of this court over the grand jury. Instead, the prosecution seems to have been attempting to secure an indictment free from any potentially prejudicial error. Though the negligence and the inadvertent errors made by the government before the first grand jury and the grand jury that returned the indictment and first superseding indictment reflect less than perfect behavior, they do not rise to the level of prosecutorial misconduct warranting dismissal of an indictment. Since the government has secured a proper second superseding indictment, defendant Herbert K. Fisher's and defendant Herman Bloom's Motions and Supplemental Motions to Dismiss the Indictment Based Upon Prosecutorial Misconduct Before the Grand Jury are hereby denied.