UNITED STATES of America, Appellee,

v.

FISHER, Herbert K., Appellant.

UNITED STATES of America, Appellee,

v.

BLOOM, Herman, Appellant.

Nos. 88–1536, 88–1537.

United States Court of Appeals,
Third Circuit.

Argued Dec. 2, 1988.
Decided March 31, 1989.

William J. Winning, Curran, Winning & Fioravanti, P.C., Media, Pa., Peter Goldberger (argued), Pamela A. Wilk, Philadelphia, Pa., for appellant Fisher.

Joel Harvey Slomsky (argued), DiGiacomo & Slomsky, Philadelphia, Pa., for appellant Bloom.

Richard L. Scheff (argued), Asst. U.S. Atty., Philadelphia, Pa., for appellee U.S.

Before HIGGINBOTHAM, MANSMANN, and GARTH, Circuit Judges.

OPINION OF THE COURT

GARTH, Circuit Judge:

This appeal presents as a threshold issue the appealability of the district court's order which denied appellants/defendants, Herbert K. Fisher and Herman Bloom's, motions to dismiss their indictment. The briefs on appeal discussed at length the details of certain alleged misconduct before grand juries by government agents. Because of our disposition, we do not find it necessary to address the arguments made with respect to the particular alleged incidents or the evidence given by the agents, other than to briefly describe the arguments giving rise to the defendants' motions. We will deny both appeals for want of an appealable order.

## I.

On October 23, 1986, Fisher and Bloom were indicted along with others (the *first* indictment), as part of the "Roofers case".[1] The indictment charged Bloom with four counts including violations of 18 U.S.C. § 1962 ("RICO" and "RICO" conspiracy), 18 U.S.C. § 1954 (offer to influence operations of an employee benefit plan) and 18 U.S.C. § 664 (embezzlement from an employee benefit plan). Fisher was charged in eight counts with violating the same statutes. On May 14, 1987 the district court ordered a three-way severance of defendants, with Fisher and Bloom constituting one grouping.

On June 18, 1987 Fisher and Bloom were indicted (the *second* indictment), on charges similar to those alleged in the *first* indictment. On November 18, 1987, and December 14, 1987, both defendants filed motions to dismiss the *first* and *second* indictments. Shortly before a hearing was scheduled by the district court to resolve the contentions raised by Fisher and Bloom concerning the first two indictments, the government announced its intention to seek a second superceding indictment (the *third* indictment).

On January 21, 1988 Fisher and Bloom were again indicted by a different grand jury in an eight-count indictment and they were again charged under RICO and with RICO conspiracy under 18 U.S.C. §§ 1962(c) and (d), with aiding and abetting the solicitation or acceptance of a kickback to influence the operation of an employee benefit plan, and with embezzlement from the plan under 18 U.S.C. §§ 664 and 1954.

On March 7, 1988 Fisher and Bloom filed supplemental motions to dismiss the *third* indictment, alleging grounds different than the grounds alleged in the motions brought to dismiss the first two indictments.

Fisher and Bloom claimed that the prosecutor in obtaining the *third* indictment misled the grand jury and, therefore, the *third* indictment did not cure the grand jury abuse and prosecutorial misconduct which occurred in connection with the first two indictments. Fisher and Bloom, therefore, contended that all three indictments demonstrated a pattern of harassment and prosecutorial misconduct.

On June 29, 1988 the district court denied Fisher and Bloom's motions to dismiss any of the three indictments. 692 F.Supp. 495. The district court found no misconduct on the part of the government with respect to the grand jury which returned the first two indictments, nor did it find that any prosecutorial misconduct occurred before the final grand jury which returned the third indictment. Because of the nature of the defendants' arguments which claimed a pattern of misconduct extending through all the grand jury proceedings—a pattern which Fisher and Bloom claimed was not cured by the third indictment—the district court was obliged to analyze and rule upon the government's conduct before each of the grand juries.

Fisher and Bloom appeal from the district court's June 29, 1988 order relying on the "collateral order" doctrine for appealability. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).[2]

## II.

Under 28 U.S.C. § 1291, only final orders are appealable. A final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978), quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). However, an exception to the final order requirement of appealability has emerged. That exception enables a party to appeal an interlocutory decision prior to final judgment of conviction when all three conditions of the "col-

---

1. The "Roofers case" involved charges of general corruption and racketeering with respect to the Roofers Union. *See U.S. v. Traitz*, 807 F.2d 322 (3d Cir.1986) (19 defendants charged in a 61 count indictment).

2. The district court granted motions by Fisher and Bloom to stay all trial proceedings pending the outcome of this appeal.

lateral order" doctrine have been satisfied. *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 374, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981).

The collateral order doctrine which found expression in *Cohen, supra,* permits appellate review of interlocutory orders that: (1) conclusively determine the disputed question; (2) resolve an issue completely separate from and collateral to the merits of the litigation, and; (3) involve an important right that will be effectively unreviewable if intermediate review is not granted. See *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949); *U.S. v. Liotard,* 817 F.2d 1074, 1079–80 (3d Cir.1987); *Flanagan v. U.S.,* 465 U.S. 259, 265, 104 S.Ct. 1051, 1054, 79 L.Ed.2d 288 (1984); *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978).

Here, we forebear from addressing the first two prongs of the *Cohen* doctrine [3] as it is the third prong (i.e., is the denial of a motion to dismiss an indictment on grounds of prosecutorial misconduct effectively reviewable?) which the parties have briefed and as to which the parties have joined issue.

### A.

Fisher and Bloom argue that in the wake of *U.S. v. Mechanik,* 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986) claims of grand jury irregularities are effectively unreviewable after conviction. As a result, they argue denials of these claims must give rise to an immediate appeal under the "collateral order" doctrine.

In *Mechanik,* two government witnesses, in the presence of each other, testified at a grand jury proceeding. They did so in violation of Fed.R.Crim.P. 6(d) which specifies who may be present during a grand jury proceeding and limits witnesses to only "the witness under examination."

The *Mechanik* defendants only learned of the joint testimony after trial had begun. At that time they moved to dismiss their indictment because of the 6(d) violation. At the conclusion of the trial and after the jury had returned a guilty verdict, the district court denied their motion to dismiss the indictment on the grounds that the violation of Rule 6(d) was harmless. The Court of Appeals for the Fourth Circuit reversed the conviction. The Supreme Court, in turn, reversed the Court of Appeals and upheld the district court's action in rejecting a dismissal of the indictment. In doing so, it stated that "... the petit jury's verdict rendered harmless any conceivable error in the charging decision that might have flowed from the violation." *Id.* at 73, 106 S.Ct. at 943.

In the present case, unlike the situation in *Mechanik* where trial had begun before the defect in the grand jury proceedings had been discovered, Fisher and Bloom made their allegations of grand jury violations *prior* to trial. They complain that if these errors are not recognized at this juncture, they can never be reviewed after trial because of the "harmless error" doctrine announced in *Mechanik.* Fisher and Bloom hypothesize that if they are convicted, the grand jury errors, if any, will be deemed harmless under *Mechanik,* and if they are acquitted, their motions to dismiss the indictment will be deemed moot.

Fisher and Bloom reason that if an interlocutory appeal is permitted after a motion to reduce pretrial bail has been denied, as it was in *Stack v. Boyle* 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951), then so too should their appeal be permitted where a motion to dismiss an indictment based on alleged grand jury irregularities has been denied. Fisher and Bloom argue that they are in no different position than was Stack.

In *Stack,* the Supreme Court, citing to *Cohen,* held that the right to an immediate appeal of a denial of pretrial bail reduction

---

**3.** The fact that we do not discuss the second prong of the *Cohen* doctrine (i.e., resolution of an issue completely separate from and collateral to the merits) does not mean that we are satisfied that a court order denying dismissal of an indictment on grounds of alleged perjurious testimony before a grand jury, is an order collateral to the merits of the litigation.

Because we rest our decision in this case on the appellants' failure to satisfy the third prong of the *Cohen* doctrine, we expressly decline to decide whether the second prong has been met.

must be allowed. If it were otherwise, observed the Court, adherence to the final judgment rule as a practical matter would defeat the right to review at all, since the right to a reduction of bail would be moot after either acquittal or conviction.

Thus, Fisher and Bloom argue that no effective review of the district court's denial of their dismissal motion can be had after trial and that accordingly a review of that ruling should be available now, under the collateral order doctrine of *Cohen.*[4]

This Court and other Courts of Appeal (with the exception of the Ninth Circuit), which have considered the issue of "effective reviewability" in connection with interlocutory appeals from grand jury proceedings, have uniformly rejected pre-trial appeals from orders denying the dismissal of indictments. *Midland Asphalt Corp. v. U.S.,* ___ U.S. ___, 109 S.Ct. 1494, 103 L.Ed.2d 879 (1989); *U.S. v. Johns,* 858 F.2d 154 (3d Cir.1988); *U.S. v. LaRouche Campaign,* 829 F.2d 250 (1st Cir.1987); *U.S. v. Taylor,* 798 F.2d 1337 (10th Cir. 1986); but see *U.S. v. Dederich,* 825 F.2d 1317 (9th Cir.1987); and *U.S. v. Benjamin,* 812 F.2d 548 (9th Cir.1987), *petition for cert. filed,* 57 U.S.L.W. 3522 (U.S. Feb. 14, 1989) (No. 88–1290).

Johns, in *United States v. Johns,* 858 F.2d 154 (3d Cir.1988), had been charged with mail fraud, commercial bribery and interstate transportation of securities taken by fraud, all pertaining to an alleged kick-back scheme. Johns argued that his indictment should be dismissed on four grounds. He asserted that the government had failed to present exculpatory evidence to the grand jury; that Fed.R.Crim.P. 6(e) which prohibits grand jury disclosures had been violated; that there was a lack of sufficient evidence to support his indictment; and finally, that the mail fraud allegations of his indictment were invalid under *McNally v. United States,* 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). In support of his argument that the denial

of his motion to dismiss his indictment came within the *Cohen* "collateral order" rule, he contended that *Mechanik* mandated interlocutory review because his claims of grand jury impropriety would not survive after trial. Thus, he likened his rights to those at issue in cases denying bail reduction (*Stack v. Boyle, supra*), and cases involving dismissals on double jeopardy grounds. (*Abney v. U.S.,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977)). In those cases, claimed Johns, the value of the rights asserted would be destroyed if not vindicated before trial.

This court rejected those arguments. The Court distinguished *Mechanik* as involving mere technical violations of Fed.R. Crim.P. 6(d), but more importantly, the Court held that *Mechanik* "was not intended to preclude the post-conviction review of assertions of error that implicate more than merely technical deficiencies." 858 F.2d at 159. In answering the *Stack* and *Abney* argument, the Court held that "[T]he order appealed from in [John's] case lacks 'the critical characteristics that make orders denying bail reduction or refusing to dismiss on double jeopardy grounds or speech or debate grounds immediately appealable.'" *Flanagan v. U.S.,* 465 U.S. 259, 266, 104 S.Ct. 1051, 1055, 79 L.Ed.2d 288. *Id.* at 157.

In so holding, we referred approvingly to *U.S. v. Taylor,* 798 F.2d 1337, 1340 (10th Cir.1986). The defendants in *Taylor* moved to dismiss the indictment claiming:

(1) invasion of the defense camp by the prosecution in violation of the attorney-client privilege and defendants' Sixth Amendment rights; (2) abuse of the grand jury through prosecutorial misconduct in the form of the prosecution's failure to present exculpatory evidence and its biasing of the grand jury with inadmissible, inflammatory, and prejudicial evidence; and (3) improper utilization of state officers in the grand jury investigation.

---

4. We recognize that Justice Marshall, in his dissent in *Mechanik,* 475 U.S. 66, 81, 106 S.Ct. 938, 947, 89 L.Ed.2d 50 (1986), suggested that denial of a Rule 6(d) motion could conceivably be

subject to interlocutory appeal under *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

*Id.* at 1338. *Taylor* denied appealability of the order refusing to dismiss the indictment because the attack made by the defendants was addressed to the "fundamental fairness" of the criminal proceeding and, as such, remained justiciable after final judgment.

In *Johns* and in *Taylor,* as in the present case, the grand jury abuses alleged differ materially from the violation at issue in *Mechanik* because the prosecutorial misconduct alleged in each of these cases raised the question as to whether the government violated a defendant's right to fundamental fairness. Indeed in *Johns,* in affirming the district court ruling which denied dismissal of Johns' indictment, we went to substantial pains to distinguish the asserted grand jury abuses that Johns alleged, from the Fed.R.Crim.P. 6(d) violation at issue in *Mechanik.*

The teaching of *Johns* is that where the grand jury abuse charged involves claimed violations of a defendant's right to fundamental fairness, as distinct from mere technical violations such as a 6(d) violation, such issues, available for exploration at trial, survive the final judgment and are reviewable on appeal from a final judgment of conviction. Because such alleged "fundamental fairness" violations can be reviewed *after* trial, *Johns* holds that they may not be reviewed *prior* to trial. This same reasoning finds expression in *Johns* and *Taylor,* as well as in *U.S. v. LaRouche,* and in the dissenting opinions of *Benjamin* and *Dederich.*

On the eve of filing the instant opinion, the Supreme Court unanimously affirmed the Second Circuit's decision in *Midland Asphalt v. U.S.,* —— U.S. ——, 109 S.Ct. 1494, 103 L.Ed.2d 879 (1989). That decision, which involved an alleged violation of Federal Rule of Criminal Procedure 6(e) (secrecy of grand jury proceedings), has now effectively rejected any claim that interlocutory review for such violations may be entertained. Among other teachings, the Court discussed the difference between a right "not to be tried" and a right "whose remedy requires the dismissal of charges." The Court's discussion indicated when the

extreme sanction of dismissal of an indictment would be appropriate, and when it would not:

> A right not to be tried in the sense relevant to the *Cohen* exception rests upon an explicit statutory or constitutional guarantee that trial will not occur—as in the Double Jeopardy Clause ... Neither Rule 6(e) nor the Constitution affords such a guarantee in the event of a violation of grand jury secrecy.

*Midland Asphalt v. U.S.,* —— U.S. ——, ——, 109 S.Ct. 1494, 1499, 103 L.Ed.2d 879 (1989). The Court also stated:

> ... the fact that this Court has held dismissal of the indictment to be the proper remedy when the Sixth Amendment right to a speedy trial has been violated ... does not mean that a defendant enjoys a "right not to be tried" which must be safeguarded by interlocutory appellate review. Dismissal of the indictment is the proper sanction when a defendant has been granted immunity from prosecution, when his indictment is defective, or, usually, when the only evidence against him was seized in violation of the Fourth Amendment. Obviously, however, this has not led the Court to conclude that such defendants can pursue interlocutory appeals. [*United States v. MacDonald, supra,* [435 U.S. 850] at 860, n. 7 [98 S.Ct. 1547 at 1552, n. 7, 56 L.Ed.2d 18 (1978)].

*Id.* at ——, 109 S.Ct. at 1499.

■ In this case, the issues raised are not technical in the sense of *Mechanik.* Fisher's and Bloom's charges center essentially on their claims that the government agents perjured themselves before the grand jury and that the government was responsible for prosecutorial harassment and other misconduct throughout all three grand jury proceedings. Issues such as these are the very matters on which a jury has traditionally focused. At trial, evidence of such misconduct, harassment and perjured testimony, if adduced, would be considered, tested and weighed by the jury. The jury would then be in a position to determine if the charged actions took place and if the testimony of the agents was

perjured as the defendants claim it was, or whether the agents were merely negligent in the manner in which they testified and suffered from lapses of memory as the district court found. (App. 1399). These matters, once examined by the jury, would then be readily available for review after a verdict of conviction.

Thus, because these issues are not of the technical variety discussed in *Mechanik*, but rather are issues that go to the fundamental fairness of the criminal proceedings, *Taylor*, 798 F.2d 1340, a petit jury determination of guilt will not moot them. Nor do the issues involved here concern defects "... so fundamental that it causes the grand jury no longer to be a grand jury, or the indictment to be an indictment, giv[ing] rise to the constitutional right not to be tried." *Midland Asphalt v. U.S.*, — U.S. —, —, 109 S.Ct. 1494, 1499, 103 L.Ed.2d 879 (1989). This being so, the defendants have not satisfied the third prong of the "collateral order" doctrine which requires effective unreviewability before an interlocutory appeal will be permitted. (See *supra* p. 446).

Accordingly, as to the first two indictments, there is no jurisdictional basis for our review. Nor can our jurisdiction be properly invoked to review the district court's dismissal of the *third* indictment.

### III.

■ As we have earlier observed, the district court, because of the nature of Fisher's and Bloom's claims, found it necessary to address the first two indictments, even though the *third* indictment (i.e., the second superseding indictment), was returned by a different grand jury. As the government claimed, and as the district court held, the *third* indictment cured any possible or claimed defects present in the earlier indictments.[5] As previously recited, we are aware that the defendants argued

that the government actions constituted a "pattern" of harassment with respect to the *third* indictment. They thereby claim that the actions taken in connection with the first two indictments tainted or infected the *third* indictment.

The district court, after analyzing the defendants' contentions concluded that there was no evidence of prejudice to the defendants, and that even if prejudice had resulted from the government actions relative to the first two indictments, the *third* indictment cured any such prejudice. (App. 1409a). In answering the defendants' arguments and denying their motion to dismiss the *third* indictment, the district court, 692 F.Supp. 503–04, stated:

"Defendant Bloom alleges that the government included references to bribery of state and federal officials and to mail fraud in its presentation to the third grand jury, despite the fact that Mr. Bloom was not charged with these crimes, and that this type of behavior constitutes misconduct warranting dismissal of the indictment. *See* Grand Jury Testimony of Agent Quinn John Tamm, Jr., 1/21/88 at 64–77. The government, however, in no way suggested to the grand jury that Mr. Bloom was either charged with or implicated in these crimes. Indeed, the prosecutor specifically stated that there was no evidence that Mr. Bloom had knowledge of or participated in the bribery of public officials. *See* Grand Jury Transcript of Prosecutor's Statement 1/21/88 at 15–17. There is nothing in the record to establish that the prosecutor intended to mislead the grand jury in this way. Similarly, Mr. Bloom contends that the prosecutor engaged in prosecutorial misconduct when he made statements to the grand jury that Mr. Bloom was involved in illegal kickbacks to union officials from "day one" of the prepaid legal services

5. The district court addressed each of the defendants' arguments concerning the *third* indictment and stated,

In any event, the presentation of the government to the third grand jury cured any potential prejudice that may have affected these defendants. The government presented its ev-

idence to a completely new grand jury which was unconnected with the Roofers investigation, and which had been empanelled only that same day. Indeed, allegations of prosecutorial misconduct before this final grand jury are without merit.
(App. 1399).

contract, when in fact defendant Bloom was only charged with crimes in 1985. The government contends that if viewed in its proper context the statement accurately describes the annual embezzlement and kickback scheme as being preplanned each year. *See id.* at 11–13. Given the ambiguity of possible interpretation, this statement did not constitute perjury or intentional misconduct. In addition, defendants argue that the prosecution misled the grand jury in its description of the charges contained in the indictment. There is no indication that the prosecutor misstated the law or did so deliberately so as to mislead the grand jury. Defendant Bloom points specifically to the prosecutor's use of the word "rebate" in reference to 18 U.S.C. § 1954, and to the prosecutor's statement that only 1985 is charged as a kickback year for purposes of the RICO predicate acts, when in actuality 1983 and 1984 were also charged as kickback years, as prosecutorial misconduct. The use of the word "rebate" by the prosecutor to describe the type of conduct made criminal by 18 U.S.C. § 1954, was wholly proper, and his explanation of the law correctly informed the grand jurors of what constitutes criminal behavior under the statute. *See id.* at 6–7, 14–16. In addition, any confusion of years was neither misconduct nor prejudicial, but rather harmless. Finally, defendant Bloom contends that the prosecutor misstated that the government had evidence that Mr. Bloom actually gave money directly to union officials when in reality there was no such evidence. The government contends that, to the contrary, such a statement was accurate. *See* Transcript of November 21, 1985 Conversation at 14. Regardless, misstatements or mistakes alone, if such they were, are not sufficient to warrant a finding of misconduct or to justify dismissal of an indictment. [*United States v. Johnson,* 767 F.2d [1259] at 1275 (8th Cir.1985)]; [*United States v.*] *Levine,* 700 F.2d [1176] at 1180 [ (8th Cir.1983) ], *see also The Bank of Nova Scotia* [*v. United States,* — U.S. —, —, 108 S.Ct.

2369, 2376–78, 101 L.Ed.2d 228], 56 U.S. L.W. at 4717 (prosecutor must have knowledge of falsity).

Defendant Fisher, on the other hand, contends that the government engaged in prosecutorial misconduct by failing to present to the grand jury extensive evidence of the activities of the thirteen roofers who have previously been tried and convicted. Mr. Fisher believes that this evidence would have enabled the grand jury to conclude that "defendant Fisher was just as much a victim of the extortion and violence perpetrated by the Roofers Union as were the roofing contractors that were extorted." Defendant Fisher's Supplemental Motion, ¶ 11. I therefore have before me the question of whether this material was exculpatory, and if so whether the prosecutor had an obligation to disclose this evidence to the grand jury. The Court of Appeals for the Third Circuit has not yet decided whether a prosecutor must disclose exculpatory evidence to the grand jury. *See U.S. v. Ismaili,* 828 F.2d 153, 165 n. 13 (3d Cir.1987); [*United States v.*] *Johns* [688 F.Supp. 1017, 1021 (E.D.Pa. 1988) ], 1988 U.S.Dist. LEXIS 2457 at 10. Regardless, this evidence is not exculpatory in the sense that it is the "kind of clearly exculpatory evidence that would likely have convinced the … grand jury … not to indict." *Hochman v. Rafferty,* 831 F.2d 1199, 1204 (3d Cir.1987). To go before the grand jury without an extensive presentation of the evidence relevant to thirteen previously tried individuals was not an attempt to mislead the jury or to engage in fundamentally unfair tactics before it. *See Hochman,* 831 F.2d at 1204 … I find that the presentation of the government to the grand jury that returned the second superseding indictment was free of misconduct … [I]n any event, the government's second superseding indictment cured any prejudice which may have resulted to these defendants from the prosecution's prior errors … [T]he record is devoid of evidence that the government has continuously sought to harass these defendants or to circumvent the supervisory power of this

court over the grand jury. Instead, the prosecution seems to have been attempting to secure an indictment free from any potentially prejudicial error." (footnotes omitted).

App. 1404–1409.

We have no occasion on these appeals to review the findings or conclusions of the district court, because as we have discussed in connection with the defendants' challenge to the first two indictments, no basis for our jurisdiction has been shown. The same holds true with respect to the district court's denial of the defendants' motions addressed to the *third* indictment.

A.

The legal system attaches "profound importance ... [to] finality in criminal proceedings," *Strickland v. Washington,* 466 U.S. 668, 693–94, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984), and thus the presumption against piecemeal review "is at its strongest in the field of criminal law." *U.S. v. Hollywood Motor Car Co.,* 458 U.S.

263, 265, 102 S.Ct. 3081, 3082, 73 L.Ed.2d 754.

The Supreme Court has long recognized that "[a]n indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits." *Costello v. U.S.,* 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956) (footnote omitted). The Grand Jury clause of the Fifth Amendment, therefore, by its terms, does not afford defendants the right not to be tried, unless there have been fundamental errors "... in which the structural protections of the grand jury have been so compromised as to render the proceeding fundamentally unfair allowing the presumption of prejudice." *Bank of Nova Scotia v. U.S.,* — U.S. —, 108 S.Ct. 2369, 2375, 101 L.Ed.2d 228 (1988).[6]

 The instant record discloses nothing that would call into question the validity on its face of the *third* indictment.[7] To

---

**6.** In *Bank of Nova Scotia v. U.S.,* — U.S. —, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988), a case involving the supervisory power of the district court to dismiss an indictment where no constitutional error was claimed, the district court had dismissed an indictment based on findings that the prosecution had violated Federal Rule of Criminal Procedure 6(e) by: (1) disclosing grand jury material to Internal Revenue Service ("IRS") agents with civil tax enforcement duties, (2) not promptly informing the court of these disclosures, (3) disclosing the names of targets to potential grand jury witnesses, and (4) giving inappropriate instructions to certain grand jury witnesses. The district court also found a violation of Rule 6(d) of the Rules of Criminal Procedure, a violation of 18 U.S.C., §§ 6002 and 6003 by the prosecutions's use of "pocket immunity" (immunity granted to a witness by the government, rather than by the court), a knowing presentation of misinformation to the grand jury and misstatements of grand jury witnesses by the government. The Court of Appeals for the Tenth Circuit reversed the district court. The Court of Appeals held that the petitioners were not prejudiced by the government's behavior since the accumulation of misconduct by the government attorneys did not significantly infringe on the grand jury's ability to exercise independent judgment.

The Supreme Court in affirming the Court of Appeals held that a federal court may not invoke its supervisory power to dismiss an indictment for prosecutorial misconduct not preju-

dicial to the defendant. In so holding, the Court addressed the question as to whether there was any misconduct by the prosecution that may have substantially influenced the grand jury's decision to indict, or whether there was a grave doubt that the decision to indict was free from the substantial influence of such misconduct. After considering each of the district court's findings, the Supreme Court concluded:

... that the District Court had no authority to dismiss the indictment on the basis of prosecutorial misconduct absent a finding that petitioners were prejudiced by such misconduct. The prejudicial inquiry must focus on whether any violations had an effect on the grand jury's decision to indict.

*Id.* 108 S.Ct. at 2378.

The same requirement of prejudice was mandated by this Court's earlier decision in *U.S. v. Martino,* 825 F.2d 754 (3d Cir.1987).

Both *Bank of Nova Scotia* and *Martino* decided appeals brought by the government under 18 U.S.C. § 3731. As such it was both appropriate and necessary for the reviewing courts to consider all arguments on the merits. Here, of course, the issue that is presented concerns our jurisdiction and absent appellate jurisdiction we are not free to address or review the merits of the defendants' arguments.

**7.** A superseding indictment may be obtained by the government at any time prior to trial. *U.S. v. Edwards,* 777 F.2d 644, 649 (11th Cir.1985);

the contrary, our independent examination of the indictment and the record to which it relates reveals no reason why in this case we should permit piecemeal appellate adjudication. Just as with the first two indictments, the defendants will be free during trial to press and attempt to substantiate before a jury their claims of the improprieties alleged to have been committed by the government and its agents. These issues will not be mooted by a jury trial. Hence, the various challenges mounted by Fisher and Bloom against the *third* indictment will be just as available for review in the event of conviction as will the challenges asserted against the first two indictments.

## IV.

We hold that the district court's order of July 29, 1988, which denied Fisher's and Bloom's motions to dismiss the first, second and third indictments, does not fall within the "collateral order" exception created by *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and is thus unappealable at this interlocutory stage. In so holding, we have taken into account our traditional reliance on jury fact-finding (leading to final judgments in criminal cases) when government improprieties are alleged, the stringent policy against piecemeal appellate adjudication in the criminal and grand jury contexts, the narrow reading given by *Johns* to *Mechanik*, the overall teaching of *Johns*, the Supreme Court's reasoning in *Midland Asphalt* and the instruction and reasoning afforded by other Courts of Appeals which have also declined appellate jurisdiction over orders denying dismissals of indictments.

The appeals filed by Fisher and Bloom will be dismissed. The mandate shall issue forthwith.

*cert. denied sub nom. Bolden v. U.S.*, 475 U.S. 1123, 106 S.Ct. 1644, 90 L.Ed.2d 189 (1986).